# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| PAULA RODZ, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>v.<br><br>MIDWEST RECEIVABLE SOLUTIONS LLC,<br><br>    Defendant. | Case No.: 19-cv-1191<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Paula Rodz is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes.

5. Defendant Midwest Receivable Solutions, LLC ("MRS") is a debt collection agency with its principal place of business located at 2323 Gull Road, Kalamazoo, Michigan 49048.

6. MRS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. MRS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. MRS is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or about November 6, 2018, MRS mailed a debt collection letter to Plaintiff regarding an alleged debt incurred for services "requested and received from WE ENERGIES UTILITIES." A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

10. The alleged debt was incurred for personal, family or household purposes, namely household utility services.

11. Upon information and belief, <u>Exhibit A</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter used by Defendant to attempt to collect alleged debts.

13. Upon information and belief, <u>Exhibit A</u> was the first letter that Defendant sent to Plaintiff regarding the alleged debt referenced in <u>Exhibit A</u>.

14. <u>Exhibit A</u> contains a statement that largely reflects the statutory debt validation notice that the FDCPA, *see* 15 U.S.C. § 1692g(a), requires the debt collector mail the consumer along with, or within five days of, the initial communication:

> Your final bill for the service address of 1118 S 65TH ST MILWAUKEE in the amount of $606.42 for services you requested and received from WE ENERGIES UTILITIES has been referred to this agency for immediate collection. Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such verification or judgment. Upon your written request within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

<u>Exhibit A</u>.

15. Immediately below the validation notice, <u>Exhibit A</u> states:

> You may also contact our office at (888) 662-1610 to obtain information about the account or dispute the debt or any portion thereof. **Please see the reverse side for important consumer information.**

<u>Exhibit A</u>.

16. The unsophisticated consumer would understand the statement that, "You may also contact our office at (888) 662-1610 to obtain information about the account or dispute the debt or any portion thereof" to mean that disputes communicated orally are equivalent to disputes communicated in writing, when, in fact the consumer needs to provide written notification of his dispute to require the debt collector to provide verification of the debt, and cease collection pending verification. 15 U.S.C. § 1692g(a)(4); *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 738 (N.D. Ill. 2003) ("However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector *may* provide verification upon *oral* notification, the debt collector *must* provide verification upon *written* notification. If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt."); *see also, Hargis v. Equinox Collection Servs.*, No. 17-cv-410, 2019 U.S. Dist. LEXIS 92336, at *15 (N.D. Okla. June 3, 2019) ("If the consumer chooses to make this request orally, instead of in writing, he loses this important protection.").

17. The instruction that a consumer can dispute the debt by phone is inconsistent with the disclosure that the consumer must dispute the debt in writing to trigger verification.

18. The instruction to call Defendant has the practical effect of discouraging individuals from submitting written disputes.

19. The overshadowing effect of the instruction to call is magnified because the instruction to call appears in a separate paragraph immediately beneath the statutory disclosures, which are formatted in a manner that is more difficult to read.

3

20. Numerous courts have found that similar instructions that consumers may communicate disputes by telephone are likely to mislead consumers about their statutory rights and violate the FDCPA. *See, e.g., Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 150 (3d Cir. 2013) ("If we can answer any questions, or if you feel you do not owe this amount, please call us toll free at 800-984-9115 or write us at the above address"); *Miller v. Payco-General Am. Credits, Inc.*, 943 F.2d 482, 483 (4th Cir. 1991) ("If a consumer attempted to exercise his statutory rights by making the requested telephone call, Payco would be under no obligation to comply with section 1692g's directives to verify the debt and cease collection efforts. The language on the front of the form instructs consumers to dispute their debt by telephone, in opposition to the statutory requirements.").

21. The instruction to contact MRS by phone overshadows the statutory notice that the consumer does not trigger verification unless the dispute is communicated in writing.

22. On May 6, 2019, the Bureau of Consumer Financial Protection ("CFPB"), the federal agency tasked with administration of the FDCPA, published a notice of proposed rulemaking, which cited an academic study that found a substantial proportion of survey respondents did not understand they would need to dispute a debt in writing to trigger certain FDCPA protections. https://files.consumerfinance.gov/f/documents/cfpb_debt-collection-NPRM.pdf at 248 n.476 (accessed: May 17, 2019).

23. According to this study, "75 percent of consumers who were shown a court-approved validation notice believed that they could orally exercise their verification rights, even though the notice expressly stated that disputes must be in writing." https://files.consumerfinance.gov/f/documents/cfpb_debt-collection-NPRM.pdf at 248 n.476 (accessed: May 17, 2019) (citing Jeff Sovern & Kate E. Walton, "Are Validation Notices Valid?

4

An Empirical Evaluation of Consumer Understanding of Debt Collection Validation Notices," 70 SMU L. Rev. 63, at 94-98 (2017)).

24. As the study cited in the CFPB shows, the validation notice may easily be obscured or overshadowed by the instruction that the consumer should "contact our office at (888) 662-1610 to obtain information about the account or dispute the debt or any portion thereof."

25. Debt collectors have an incentive to avoid processing disputes. While the debt collection process is primarily automated, disputes must be processed by hand, and sometimes by an attorney's hand. Written disputes and refusals cause debt collectors to incur costs of time and money to validate debts, and put the collector at risk of FDCPA liability for the subsequent communications related to validation. *See, e.g., Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785-86 (6th Cir. 2014) (debt collector's response to consumer's verification request was insufficient and violated 15 U.S.C. §§ 1692e and 1692g). Debt collectors may likewise be concerned that creditors, who must also respond to requests for validation, would be hesitant to use debt collectors whose letters prompt disputes, "wasting" creditors' time by requiring responses.

26. Further, Exhibit A does not clearly state the name of the creditor to whom the debt is owed.

27. Exhibit A states that the alleged debt was incurred in connection with "services you requested and received from WE ENERGIES UTILITIES," and that it was "referred to this agency for immediate collection," but does not identify the *current* creditor of the debt.

28. On the face of Exhibit A, it is impossible to determine whether the alleged debt in Exhibit A is held by Defendant, "WE ENERGIES UTLITIES," or some unnamed third party.

29. Exhibit A does not state who "referred" the alleged debt to Defendant, and further does not define the scope of this "referral."

30. Confusing and misleading representations about the name of the creditor are material misrepresentations because they create the potential for fraud or double-payments. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 324-25 (7th Cir. 2016); *Taylor v. Alltran Fin., LP*, No. 18-cv-306-JMS-MJD, 2018 U.S. Dist. LEXIS 159862, at *6 (S.D. Ind. Sept. 19, 2018).

31. For this reason, courts hold that a debt collector must clearly and unequivocally identify the current creditor to whom the debt is owed and "a FDCPA plaintiff states a claim when she alleges that the collection letter names the creditor in a manner that is unclear or confusing." *Blarek v. Creditors Interchange*, No. 05-cv-1018, 2006 U.S. Dist. LEXIS 60595, at *3 (E.D. Wis. Aug. 25, 2006); *see also, e.g., Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 133 (E.D.N.Y. 2007); *Walls v. United Collection Bureau*, No. 11-cv-6026, 2012 U.S. Dist. LEXIS 68079, at *5 (N.D. Ill. May 16, 2012); *Deschaine v. Nat'l Enter. Sys.*, No. 12-cv-50416, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013); *Aribal*, 2013 U.S. Dist. LEXIS 105355, at *12-13; *Braatz*, 2011 U.S. Dist. LEXIS 123118, at *3; *Pardo v. Allied Interstate, LLC*, No. 14-cv-1104, 2015 U.S. Dist. LEXIS 125526, at *8-9 (S.D. Ind. Sept. 21, 2015); *Long v. Fenton & McGarvey Law Firm, P.S.C.*, 223 F. Supp. 3d 773, 778-79 (S.D. Ind. Dec. 9, 2016); *Brinkmeier v. Round Two Recovery, LLC*, No. 15-cv-3693, 2016 U.S. Dist. LEXIS 97664, at *4 (E.D.N.Y. July 25, 2016); *Datiz v. Int'l Recovery Assocs.*, No. 15-cv-3549, 2018 U.S. Dist. LEXIS 127196 (E.D.N.Y. July 27, 2018), *adopted by,* 2018 U.S. Dist. LEXIS 163290 (E.D.N.Y. Sept. 24, 2018); *Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d 754, 761 (D. Md. 2017); *Taylor*, 2018 U.S. Dist. LEXIS 159862, at *7-11.

32. Plaintiff read Exhibit A.

33. Plaintiff was confused by Exhibit A.

34. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

35. Plaintiff read Exhibit A. The language in Exhibit A described in paragraphs 14 and 15, above, made Plaintiff believe that disputing her debt orally is equivalent to disputing her debt in writing.

36. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA*

37. Debt collection letters containing alleged misrepresentations of consumer's validation rights, inherently create the risk of the kinds of harm the FDCPA was intended to prevent – including that the consumer will forfeit "the ultimate power vis-à-vis debt collectors: the power to demand the cessation of all collection activities." *Evans v. Portfolio Recovery Assocs.*, LLC, 889 F.3d 337, 348 (7th Cir. 2018), *quoting Brady v. Credit Recovery Co.*, 160 F.3d 64, 67 (1st Cir. 1998); *see also* 15 U.S.C. § 1692e(2)(a); *Boucher v. Fin. Sys. of Green Bay,* 880 F.3d 362, 368 (7th Cir. 2018); *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017) (risk of payment resetting the statute of limitations); *Larkin v. Fin. Sys. of Green Bay Inc.,* No. 18-C-496, 2018 U.S. Dist. LEXIS 191305 (E.D. Wis. Nov. 8, 2018) (plaintiff had standing for her claim that creditor misrepresented that it maintained a credit rating for the plaintiff, even when the claim failed on the merits"); *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives

7

misinformation form a debt collector [that the debt collector is licensed as a debt collector in Wisconsin] has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a

8

decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

38. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

39. Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

40. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

10

41. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

42. 15 U.S.C. § 1692g states, in part:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

. . .

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

(b) Disputed Debts

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

## **COUNT I – FDCPA**

43. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

44. Exhibit A is false, deceptive, misleading, confusing, and unfair to the unsophisticated consumer.

45. The instruction in Exhibit A that the consumer should call Defendant "to obtain information about the account or dispute the debt" is inconsistent with the consumer's right to dispute the debt and require the debt collector to cease collection pending verification.

11

46. Defendant violated 15 U.S.C. §§, 1692e, 1692e(10), 1692g(a)(4), and 1692g(b).

## COUNT II – FDCPA

47. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

48. <u>Exhibit A</u> is false, deceptive, misleading, confusing, and unfair to the unsophisticated consumer.

49. The instruction in <u>Exhibit A</u> fails to clearly and unequivocally identify the name of the current creditor of Plaintiff's alleged debt.

50. Defendant violated 15 U.S.C. §§, 1692e, 1692e(10), and 1692g(a)(2).

## CLASS ALLEGATIONS

51. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action (c) seeking to collect a debt for personal, family or household purposes, (d) between August 19, 2018 and August 19, 2019, inclusive, (e) that was not returned by the postal service.

52. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

53. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

54. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

55. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

56. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

57. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: August 19, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com